UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOWAKI KOMATSU,

                    Plaintiff,

– against –

THE CITY OF NEW YORK, *et al.,*

                    Defendants.

**ORDER**

20-CV-7046 (ER) (lead case)

20-CV-7502 (ER)
20-CV-8004 (ER)
20-CV-8251 (ER)
20-CV-8540 (ER)
20-CV-8933 (ER)
20-CV-9151 (ER)
20-CV-9154 (ER)
20-CV-9354 (ER)

Ramos, D.J.:

      On December 14, 2020, Komatsu, proceeding *pro se*, filed a letter seeking injunctive relief, alleging that he was "barred" from a public meeting held by the New York City Council's Committee on General Welfare.  *See* Doc. 44 at 3.  He seeks an injunction that "restrains [the City] from continuing to violate [his] constitutional rights as they pertain to public forums" and also seeks to "void" two public meetings held on December 14 and 16, 2020.  *Id.* at 3, 4.  Because his submissions focus on restrictions to his testimony at public meetings, the Court construes this request as a motion for a preliminary injunction to prohibit the City of New York from imposing future restrictions on his ability to testify at public hearings.[1]  Defendant City of New York filed an opposition on December 21, 2020.  Doc. 52.  Plaintiff filed a reply on January 2, 2021.  Doc. 61.[2]

---

[1] Komatsu's request to "void" the public hearings is premised on a violation of New York Open Meetings Law.  *See* N.Y. Pub. Off. Law § 107(1).

[2] In addition to Plaintiff's reply itself, he has filed requests for additional pages for the reply and requested leave to move for an additional injunction against the City.  *See, e.g.*, Docs. 66, 68.  In light of this order, these requests are denied.

### A. Factual Background

Due to the COVID-19 pandemic, the New York City Council has moved its meetings online via the Zoom videoconference platform. Members of the public may livestream the meetings or view recordings of these meetings after they are finished. *See* Doc. 52-1, Declaration of Johanna Castro, at ¶ 7. Not all legislative hearings have public comment portions, but for those that do, members of the public who wish to testify can obtain a Zoom link to that meeting. *Id.* at ¶ 3. The City requires members of the public to complete a brief registration form indicating the subject of their testimony. *See* Doc. 44 at 2 (showing a screenshot of Komatsu's online registration form).

Komatsu alleges that he was prohibited from testifying at public meetings on December 14 and 16, 2020. Doc. 61 at 6, 10. Komatsu included a screenshot of his registration form for the December 14, 2020 meeting. In the required "subject of testimony" field, he simply wrote "tell you later." Doc. 44 at 2. As a result, he was not given a meeting link that permitted him to testify.[3] Komatsu properly registered in advance to testify at the December 16, 2020 public meeting, but had his camera turned off and status changed to that of an "attendee"—which gave meeting organizers control of whether he could speak during the meeting—when during the course of the meeting Komatsu raised his middle finger at the Councilmembers. Doc. 61 at 7.[4] He argues that these incidents violated his First and Fourteenth Amendment Rights. He does not

---

[3] The City also states that it has no record of Komatsu "registering" to provide testimony in advance of this hearing at all. Castro Decl. at ¶ 8. Komatsu responds that he did in fact submit the registration form and includes a December 14 email asking several city officials why he could not testify despite having "registered." Doc. 61 at 9-10. At this stage, it is unnecessary for the Court to determine whether there were other technical reasons supporting the City's decision to not permit him to testify at this meeting, because the City argues that it was "permitted to deny [Komatsu] the privilege of testifying" solely due to his failure to disclose his topic of testimony. Doc. 52 at 3. Thus, the Court assumes, for the purposes of resolving this motion, that Komatsu's attempt to register was denied based on refusal to disclose his topic of testimony, as opposed to other technical grounds.

[4] The December 16, 2020 meeting was a joint meeting of the Committee on Oversight and Investigations and Committee on Public Safety. Castro Decl. at ¶ 9.

2

suggest that he was otherwise barred from attending (i.e., viewing) either of the meetings, which were available for public streaming online.

For the reasons discussed below, Komatsu's motion is DENIED.

### B.     Legal Standard

To obtain a preliminary injunction, a plaintiff must establish irreparable harm and meet either of two standards: "(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 348 (S.D.N.Y. 2020) (citations omitted). Generally, however, a Plaintiff seeking to enjoin government action must satisfy the more demanding "likelihood of success on the merits" test. *See Trump v. Deutsche Bank AG*, 943 F.3d 627, 637 (2d Cir. 2019) (citing cases), *overruled on other grounds by Trump v. Mazars USA, LLP*, 140 S.Ct. 2019 (2020). Moreover, when a plaintiff seeks to alter, rather than maintain, the status quo, he must establish a "substantial" likelihood of success on the merits. *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

### C.     Likelihood of Success on the Merits

#### i.     First Amendment Claim

The parties agree that these City Council meetings were limited public forums. A limited public forum exists "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002) (internal quotation marks and citation omitted). In such public forums, regulation of the designated subject matter of the forum receives strict scrutiny, but regulation of

matters outside of that forum's purpose must only be "viewpoint neutral and reasonable."  *Id.* at 546.  Legislative meetings that permit public comment are typically considered limited public forums.  *See, e.g.*, *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 174–76 (1976)).

Komatsu has not shown that he is likely to succeed on the merits of his First Amendment claims regarding either of these meetings.  Regarding the December 14, 2020 meeting of the Committee on General Welfare, Komatsu did not disclose the topic on which he wanted to present testimony, instead simply writing "tell you later" on his registration form.  Doc. 44 at 2.  It is reasonable for the City to request that participants specify the subject of their testimony before registration, to ensure it complies with the designated subject or subjects of that meeting. *See Smith v. City of Middletown*, No. 09 Civ. 1431 (JCH), 2011 WL 3859738, at *5 (D. Conn. Sept. 1, 2011) (citing *City of Madison*, 429 U.S. at 178 n. 8).  Moreover, the City's requirement that Komatsu disclose the subject of his testimony was also viewpoint neutral, because the City did not ask him to disclose any particular viewpoint on the registration form—only the subject of testimony itself.[5]  There is also no evidence that Komatsu ever changed his response to that question so as to provide the City with the anticipated subject of his testimony.  Thus, the City was not obligated to permit him to testify.

Regarding the December 16, 2020 meeting, the City states that Komatsu properly registered, but had his camera turned off because he made an obscene gesture—i.e., that he raised his middle finger at the council members.  Castro Decl. at ¶ 9.  The City states that he has engaged in obscene or disruptive behavior on several prior occasions, including when it was not

---

[5] Indeed, Komatsu does not directly allege that he was restricted from testifying at this meeting because of his specific viewpoint on any agenda items.  According to the Meeting Minutes submitted by the City, these agenda items included supportive housing and outreach to homeless individuals.  *See* Doc. 52-2.

his turn to speak.[6]  Komatsu clarifies that in addition to turning off his camera, the City also restricted his ability to unmute his microphone without permission from the meeting host, thus functionally prohibiting him from testifying.  Doc. 61 at 8.

As a threshold matter, prohibiting someone from testifying at a public meeting because they have disrupted or otherwise interrupted the meeting is a "[r]easonable time, place and manner restriction[] on speech in limited public fora."  *See Devine v. Village of Port Jefferson*, 849 F. Supp. 185, 190 (E.D.N.Y. 1994) (upholding the expulsion of an individual from an open public meeting for disruptive behavior).  Such prohibitions pass constitutional muster so long as they are content-neutral, serve a significant government interest, and leave open alternative channels for expression.  *Id.*

Komatsu does not contest that the meeting was a limited public forum, nor does he spend significant space arguing that his gesture was related to the designated meeting topics.  Doc. 61 at 5.  While he briefly argues that his gesture was made while "rehearsing" his testimony, this argument only suggests that he made the gesture outside of his designated time to testify at the meeting.  *Id.* at 6.  Thus, Komatsu has undermined any inference that the gesture was protected speech within the parameters of this limited public forum.  Such an inference would also be undermined by Komatsu's acknowledgment that the gesture was intended to "express justifiable hatred to the Council" for failing to let him testify in the December 14 meeting.  *Id.*  This grievance is of course beyond the scope of the December 16, 2020 meeting, which focused on racism, bias and hate speech in the New York City Police Department.  *See* New York City Council, December 16, 2020 Joint Meeting of the Committee on Public Safety and Committee

---

[6] *See Id.* at ¶ 11; Doc. 52 at 4.

on Oversight and Investigations (December 16, 2020),

https://councilnyc.viebit.com/player.php?hash=vCSubGX9t9Mb.

The City's action of turning off Komatsu's camera and muting his microphone was therefore a reasonable restriction imposed to prevent his ability to further disrupt the meeting, and involved no impermissible viewpoint discrimination. The City has a significant interest in conducting its meetings in an orderly fashion. *Devine*, 849 F. Supp. at 190. Moreover, the City's restriction on Komatsu's testimony in this particular meeting did not close other channels for him to communicate his views on public safety, nor did the City's action constitute any sort of blanket ban on his ability to testify at future meetings so long as he complies with meeting rules. Indeed, as the City points out, he has testified at several other public meetings in recent months. Castro Decl. at ¶ 5.

### ii. Selective Enforcement Claim

Regarding the December 16 meeting, Komatsu also argues that he has been subject to selective enforcement based on his protected First Amended expression, in violation of the Fourteenth Amendment. A plaintiff pursuing a selective enforcement claim must allege that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1994). Individuals who are "similarly situated" must show that they engaged in conduct of "comparable seriousness" but faced different disciplinary outcomes than others. *See Graham v. L.I.R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).[7]

---

[7] The Second Circuit held that the *Graham* test applies to *LeClair* claims in *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019).

In support of this theory, Komatsu argues that the City Council has at other times permitted obscenity at its meetings.  As evidence, Komatsu posts a link to a June 9, 2020 public hearing on police reform that included several hours of public testimony (including from Komatsu himself) that included vulgar language by members of the public (including Komatsu himself).  Komatsu argues that the City cannot prevent him from testifying in the December 16, 2020 meeting due to his obscene gesture, while having permitted vulgar language at a previous meeting.

Komatsu's argument that he has been selectively prosecuted is undermined by the very fact that he was permitted to testify, along with others, at the June 9, 2020 virtual meeting— despite the fact that he did in fact use vulgar language at that hearing.  *See* Doc. 61 at 2; *see also* New York City Council, June 9, 2020 Meeting of the Committee on Public Safety (June 10, 2020), https://councilnyc.viebit.com/player.php?hash=vCSubGX9t9Mb.  Thus, Komatsu was treated similarly to other members of the public who testified at the June 9 hearing.  The video cited by Komatsu also shows that his remarks during the June 9 hearing occurred within his allotted time to speak, whereas here he has argued that the gesture made at the December 16, 2020 meeting was made while "rehearsing" such testimony.  Komatsu has also not established that there were other attendees at the December 16, 2020 meeting who, for example:  (1) made obscene gestures; (2) made these gestures outside of their designated turns to speak or without reference to the topic at hand; (3) were permitted to continue such behavior while Komatsu was not; or (4) have been accused of similar disruptive behavior in virtual meetings on several prior occasions.  Thus, Komatsu has not shown that he has been treated unfairly compared to similarly

situated individuals, and he is unlikely to succeed on the merits of a selective enforcement claim.[8]

### iii.     New York Open Meeting Law Claim

Komatsu also seeks to have these meetings declared void under New York Open Meetings Law § 107.  *See* N.Y. Pub. Off. Law § 107.  However, a Court may only void such a meeting if the public body "failed to comply" with the law and a plaintiff shows good cause.  *See* § 107(1).  Unless otherwise required by law to accept testimony, public bodies conducting meetings via videoconference need only "provide an opportunity for the public to attend, listen and observe."  § 103(c).  There is no general obligation to permit members of the public to testify, and these Committee meetings were not of the type in which testimony would have been required.  *See* Doc. 52 at 5 n. 5 (listing certain types of meetings in which the City must accept public testimony pursuant to its charter).  Therefore, Komatsu has established no violation of New York's Open Meetings Law.

### D.     Irreparable Harm

Komatsu seeks an injunction that "restrains [The City] from continuing to violate [his] constitutional rights as they pertain to public forums."  Doc. 44 at 3.  Because he has not shown a likelihood of success on his Constitutional claims or regarding a violation of New York Open Meetings Law, he fails to establish that he would experience irreparable harm in the event an injunction is not issued.  Thus, he has failed to make a showing of irreparable harm.[9]

---

[8] To the extent Komatsu alleges selective enforcement regarding the December 14, 2020 meeting, this request would also be denied, as he has not established that other individuals refused to disclose the subject of their testimony but were nevertheless permitted to testify.

[9] The Court also finds that the City Council's desire to limit public comment in its meetings to items on the agenda and to designated public comment times is in the public interest.  *See Devine v. Village of Port Jefferson*, 849 F. Supp. 185, 190 (E.D.N.Y. 1994).

### E.      Conclusion

Komatsu's motion for a preliminary injunction is therefore DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 44, and mail a copy of this Order to Plaintiff.

IT IS SO ORDERED.

Dated:   January 26, 2021
            New York, New York

                                                  Edgardo Ramos, U.S.D.J.