UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOWAKI KOMATSU,<br><br>                Plaintiff,<br><br>– against –<br><br><br>THE CITY OF NEW YORK, *et al.*,<br><br><br><br>                Defendants. | <u>**OPINION AND ORDER**</u><br><br>20 Civ. 7046 (ER)<br>20 Civ. 7502 (ER)<br>20 Civ. 8004 (ER)<br>20 Civ. 8251 (ER)<br>20 Civ. 8540 (ER)<br>20 Civ. 8933 (ER)<br>20 Civ. 9151 (ER)<br>20 Civ. 9154 (ER)<br>20 Civ. 9354 (ER) |

<u>Ramos, D.J.:</u>

Towaki Komatsu, proceeding *pro se*, has brought suit against the City of New York and over 100 other defendants, including police officers, elected officials, and approximately sixty-eight Doe defendants, alleging numerous violations of his civil rights.  Before the Court are motions to dismiss by the City of New York (the "City") and Manhattan District Attorney Cyrus Vance.  For the reasons discussed below, both motions are GRANTED.

## I.    BACKGROUND

### A.  Factual Background

#### i.  Claims Against the City and Other Individual City Defendants

This is a consolidated action encompassing nine separate cases filed by Komatsu between August 29 and November 6, 2020.  In each of his complaints, Komatsu alleges that his First Amendment rights were violated by City officials at various public events.  He appears to directly raise allegations stemming from at least sixteen public events across the nine complaints, though many more events—and allegations of misconduct stemming therefrom—are described

in detail.  In addition to these First Amendment violations, Komatsu alleges numerous other

violations of his rights, including First Amendment retaliation, Fourth and Fourteenth

Amendment violations (proffering both substantive and procedural due process theories), abuse

of process, and municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

(1978).  Komatsu's complaints amount to a total of 1,713 pages and include dozens, if not

hundreds, of links to days' worth of video footage, as well many lengthy diatribes against the

defendants and others not named in the case.  Despite the surfeit of background information, the

Court understands Komatsu's complaints to allege that his rights were violated by various

restrictions on his ability to either attend or speak in various public meetings, beginning on

August 30, 2017.  *See, e.g.*, Case No. 7046 at 8 (describing an August 30, 2017 mayoral town

hall event).[1]

The complaints allege violations stemming from several different kinds of public

meetings.  First, Komatsu references "town hall" events, in which a City Council district's

legislators (and/or the mayor) are made available for questions regarding issues impacting their

districts.  *See, e.g.*, Case No. 8004 at Ex. A (flyer for September 28, 2017 town hall event with

Mayor de Blasio and several councilmembers).  Second, he references New York City "Resource

Fairs," in which members of the public are permitted to "meet with top city commissioners and

senior staff . . . to address [attendees'] questions and concerns."  *Id.* at Ex. B.  Third, he

references public hearings regarding particular pieces of legislation in City Hall's "Blue Room,"

which provide opportunities for the public to comment on legislation after it is passed.  *See, e.g.*,

---

[1] Unless otherwise noted, references to "Case No. __" refer to the operative complaint in the referenced member case.  The member cases in this consolidated action and their operative complaints are:  20 Civ. 7046 (Doc. 5); 20 Civ. 7502 (Doc. 4); 20 Civ. 8004 (Doc. 2); 20 Civ. 8251 (Doc. 37); 20 Civ. 8540 (Doc. 3); 20 Civ. 8933 (Doc. 2); 20 Civ. 9151 (Doc. 2); 20 Civ. 9154 (Doc. 2); and 20 Civ. 9354 (Doc. 10).

Case No. 8540 at 10. Fourth, he references City Council committee meetings, which are held for the purposes of discussing particular issues and sometimes include public comment sessions. *See generally* Case No. 9154; *see also* Doc. 89 at 2 (order denying Komatsu's preliminary injunction request).[2] Finally, he briefly references a press conference held on October 3, 2017 at the steps of City Hall by then-City Councilmember Jumaane Williams. *See* Case No. 8251 at 112.

The common thread in Komatsu's complaints is that he has attempted to engage in "whistleblowing" against Mayor de Blasio and/or other defendants at these public events. By whistleblowing, Komatsu appears to refer both to oral testimony and distribution of literature. *See, e.g.*, Case No. 7046 at 97 (referencing his desire to "engage in protected whistleblowing" as a speaker and by distributing literature with "whistleblowing information"). The subjects of Komatsu's whistleblowing include his desire to remove Bill de Blasio as mayor, *see, e.g.*, Case No. 8251 at 117, allegations of misconduct against the City's Human Resources Administration ("HRA") regarding conditions in his building and a prior lawsuit he filed against the HRA, *see, e.g.*, Case No. 7046 at 28; Case No. 7502 at 142–143, and his desire to spread public awareness about the fact that defendant Howard Redmond, a member of the New York City Police Department, was named in another civil suit in this district, *see, e.g.*, Case No. 8004 at 11. Komatsu also alleges that these whistleblowing activities—as well as his similar actions at other events dating back to at least April 2017—provide the basis for retaliation, "voter suppression," and numerous other claims. *See, e.g.*, Case No. 8004 at 43–44.

In describing his claims, Komatsu generally emphasizes alleged violations of his First Amendment rights, but also frequently brings causes of action under the Fourth, Fifth and

---

[2] Unless otherwise noted, all citations to "Doc. _" refer to the docket for lead case 20 Civ. 7046.

Fourteenth Amendments.  In all complaints, he alleges that his right to engage in whistleblowing activities was violated, although the precise circumstances of each event somewhat varies.  In some cases, the alleged violation is that he was prohibited from entering the premises at which a given event was held.  *See, e.g.*, Case No. 8540 at 146 (alleging that a defendant "coerced me to leave the line I lawfully waited in with other members of the public" and that another Doe defendant "illegally refused to issue me an admission ticket.").[3]  In others, he acknowledges that he was permitted to enter the premises, but appears to allege that he was made to sit in an overflow room.  *See, e.g.*, Case No. 7502 at 130–31 (alleging that defendants violated "my constitutional rights to attend the Mayor's 9/14/17 town hall from within the room in which it was conducted" and that he "prepared whistleblowing literature . . . to lawfully distribute . . . while I would be in the overflow room that was setup for that town hall.").  Finally, in at least three cases, he alleges being removed from the public forum or otherwise having his testimony cut short.  *See* Case No. 7046 at 57–58 (alleging that defendant Nieves "illegally coerce[d] me to leave that gym through a side exit"), Case No. 8540 at 217 (alleging that an NYPD officer and Mayor de Blasio "illegally subject[ed] me to witness tampering by deliberately and impermissibly interfering with and interrupting my testimony while [Mayor de Blasio] needed to instead shut up. . ."); and Case No. 9154 at 154–55 (describing an exchange with then-City Councilmember Richie Torres in which Komatsu was "coerced . . . to reluctantly leave that room on my own and lawfully wait directly outside of it to confront Mr. Torres and other members of the City Council as they exited . . . .").

---

[3] Regarding this incident, Komatsu also notes that "[i]n hindsight, I should have stayed in that line and lawfully forced my way into that school to attend that town hall while lawfully engaging in self-defense against everyone who initiated physical contact with me to continue to violate my constitutional right to attend that town hall."  Case 8540 at 146.

Most of these public events—fourteen out of the sixteen alleged—occurred in late summer and fall 2017. However, Komatsu also alleges that he attended two events in 2019 at which his rights were violated for similar reasons. *See* Case No. 8540 (alleging constitutional violations at a March 18, 2019 Blue Room hearing); Case No. 9154 (alleging constitutional violations at a November 13, 2019 City Council hearing).

### ii. Claims Against Vance

Komatsu's claims against Manhattan District Attorney Vance appear to stem from the fact that Vance has not initiated criminal prosecutions or otherwise taken action against any of the other defendants for their alleged actions in this case. Komatsu states that on October 3, 2017, he spoke to Vance and defendant Lawrence Byrne at a New York City Bar Association event, at which he "specifically and clearly asked both of them to intervene on my behalf to end the NYPD's illegal practice of preventing me from attending public forums that the Mayor was conducting." Case No. 8251 at 41. He alleges that Vance responded that he "wouldn't do so and didn't know if such acts against me violated any laws." *Id.* at 42. Komatsu purportedly responded that the actions of other defendants in this case constituted violations of federal criminal statutes, to which Vance is alleged to have "irrelevantly stated that he wasn't a federal prosecutor instead of agreeing to properly and promptly do his job . . . ." *Id.*

On this basis, Komatsu raised twenty-one causes of action against Vance, including First and Fourteenth Amendment violations, public and private nuisance, and violations of the Hatch Act.[4]

---

[4] Komatsu also names Vance as a defendant in Case Nos. 8540, 8933, 9151, and 9354, based on what appears to be the same conduct. However, Vance has only been served in Case No. 8251 and thus only makes his motion in that case.

### B.  Procedural History

Komatsu filed the first complaint in this consolidated action, Case No. 7046, on August 29, 2020.  Between that date and November 6, 2020, he filed eight related cases.  On November 17, 2020, the Court ordered Komatsu to show cause why filing restrictions should not be imposed, given his frequent and voluminous filings concerning issues collateral or irrelevant to this consolidated case.  Doc. 29.  Following a hearing on December 15, 2020, the Court required Komatsu to comply with certain restrictions regarding future letters or motions filed with the Court.  Doc. 45.  At that conference, the Court also granted the City and Vance leave to file the instant motions to dismiss, and took under advisement a letter motion that Komatsu had filed the previous day, in which he sought preliminary injunctive relief to bar the City from "continuing to violate [his] constitutional rights as they pertain to public forums."  Doc. 44 at 3.  The Court construed this as a preliminary injunction motion, which it denied on January 26, 2021.  Doc. 89.

### II.  LEGAL STANDARD

### A.  Rule 8

Under Fed. R. Civ. P. 8, a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  The "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Therefore, "'[c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system.'"  *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. Mar. 18, 1991) (quoting *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972)).

When "a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citation omitted). In such situations, dismissal without prejudice is customary, but dismissal without leave to amend may be appropriate in "extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." *Id.* Rule 8 applies to *pro se* complaints; therefore, if the complaint is "incoherent, rambling, and unreadable," it may be dismissed notwithstanding the principle that *pro se* complaints must be liberally construed. *Barsella*, 135 F.R.D. at 66.

## B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

III.    **DISCUSSION**

A.  **Failure to Comply with Federal Rule 8**

The City argues that none of Komatsu's complaints comply with Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Doc. 104-1 at 7–9. In particular, it alleges that no "fair understanding" can be discerned from the complaints, given their length, superfluous facts, "prolix anecdotes to unrelated litigations,"

copious links to video footage, and slew of images of defendants and other individuals. *Id.* at 8–9; Doc. 148, Reply Br. at 2. The Court agrees.

It is well-established that a district court may dismiss a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Robinson v. Matos*, No. 97 Civ. 7144 (TPG), 1999 WL 225938, at *1 (S.D.N.Y. Apr. 19, 1999) (internal quotation marks omitted). While the Court has recited the core pertinent facts that it can discern from Komatsu's complaints, the full substance of Komatsu's accusations is difficult to divine, as is the relevance of many of the facts he alleges. The nine complaints are extremely long, ranging from 77 to 368 pages, and are filled with meandering statements about his past dealings with City officials, as well as about other individuals with little or no discernable connection to his claims. *See, e.g.*, Case No. 8251 at 25–28 (describing in detail the events underlying a separate civil suit against defendant Redmond); *id.* at 63–65 (describing a public conversation between Ruth Bader Ginsberg and Antonin Scalia); *id.* at 73–78 (recounting various orders issued by a state court judge in Komatsu's 2017 lawsuit against the HRA that he believes were illegal); *id.* at 94–97 (describing his dissatisfaction with aspects of the Bronx District Attorney's prosecution of Komatsu's former roommate).

These tangents make it difficult to understand exactly how the facts alleged provide a basis for Komatsu's claims—or which facts support which allegations—causing significant prejudice to Defendants who must sift through hundreds of pages and hours of video footage to fully ascertain the nature of the charges against them. This is precisely the sort of pleading that leaves the defendant "forced to select the relevant material from a mass of verbiage." *Rodriguez v. Trs. of Columbia Univ. in the City of N.Y.*, No. 03 Civ. 4072 (TPG), 2006 WL 2521323, at *3 (S.D.N.Y. Aug. 30, 2006) ("*Rodriguez II*") (citation omitted) (striking a 301-page complaint with

327 pages of exhibits, which was filled with "redundant, argumentative, and … inflammatory material.").

As best as the Court can discern, Komatsu's sole argument based on Rule 8 is that other complaints filed in this District have exceeded 300 pages. Doc. 132 at 19 (*citing Rodriguez v. Trs. of Columbia Univ. in the City of N.Y.*, No. 03 Civ. 4072 (RMB)(DF), 2004 WL 1087264, at *1 (May 14, 2004) ("*Rodriguez I*") and other cases with lengthy complaints). Komatsu is correct that there is no "numerical touchstone[]" under Rule 8. *See Rodriguez II*, 2006 WL 2521323, at *3. However, judges in this District have dismissed complaints on Rule 8 grounds that did not exceed 100 pages, depending on the particular circumstances. *Id.* (collecting cases). Simply put, length is only one consideration under Rule 8, and the issue here is not simply that the complaints are long. Rather, it is that their length, redundancy and frequent frolics into seemingly irrelevant materials inhibit the Court and Defendants' ability to understand the nature of many of the issues he has raised.

To use Case No. 20-cv-9154 as just one example, Komatsu's 198-page complaint includes a 75-page "Background and Retrospective Facts" section in which he includes, among other anecdotes: fourteen pages of allegations regarding the use of cell phones by City Council members at previous hearings (including nine screenshots of footage from City Hall's overhead security cameras), eleven pages alleging that the room changes of two City Council meetings violated his rights, and eleven pages describing the failure of City Council staff to provide him an opportunity to stream video footage on his laptop as part of his public testimony. *See* Case No. 9154 at 31–67. Another "Statement of Facts" follows on page 143, in which Komatsu ultimately focuses his allegations on a November 13, 2019 City Council meeting, at which he alleges that his testimony was unlawfully cut short by then-Councilmember Richie Torres.

In the end, Komatsu's claims in Case No. 9154 appear only to directly relate to this brief exchange with Torres. However, even regarding this uncomplicated fact pattern, Komatsu's pleadings are so argumentative and conclusory that they obscure any straightforward account of what happened and how the numerous causes of action are supported by the facts alleged. For example, after stating that Torres referred to his testimony as "irrelevant to the subject of the hearing," Komatsu makes the following allegations before moving forward with his statement of facts:

> Mr. Torres was again using a fraudulent pretext as he again engaged in Witness tampering in violation of NYPL §215.10, First Amendment and whistleblower retaliation, viewpoint discrimination, standardless discretion, abuse of process, and an illegal prior restraint on my First Amendment rights in violation of New York City Charter §1116, NYPL §195.00, Mr. Torres' constitutional oath as an employee of the City of New York, my First Amendment and Fourteenth Amendment due process and equal protection rights, the Fourteenth Amendment's prohibitions against selective-enforcement and discrimination, New York State's Open Meetings Law, and 5 U.S.C. §1502(a)(1).

Case No. 9154 at 153.

Komatsu's description of the incident and its aftermath is twenty-seven pages in total, and includes a screenshot of a Doe defendant sitting next to Torres, whose only connection to the case is that she "made a point of holding her head with her right hand while flagrantly violating 42 USC §1986 and New York City Charter §1116 . . . by not making any attempt to get Mr. Torres to immediately stop interrupting my testimony in that hearing . . . ." *Id.* at 154. The Complaint ultimately alleges twenty-two claims, twenty-one of which name Torres as a defendant and fourteen of which name the above-referenced Doe defendant. It is difficult to understand how many of these claims could possibly relate to the exchange he describes. *See, e.g.*, Claim 20 (alleging unjust enrichment against Torres, the Doe defendant, and seven others). Moreover, within his section setting forth the "Causes of Action," the majority of his stated

claims are simply supported by the statement "[t]he defendants that this claim concerns are liable for it due to the information that I presented in this complaint."[5]

The Court uses Case No. 9154 as an example in part because it is one of Komatsu's more focused complaints, as the numbered causes of action all appear to relate to the November 13, 2019 City Council meeting.  Thus, for other cases which cover more events, the factual bases for the causes of action are even less clear.  Collectively, Komatsu's complaints raise approximately 200 claims against 125 defendants, spread across 1,713 pages of meandering and combative text. Each of these complaints violates Rule 8.

When a complaint violates Rule 8, it is typically an abuse of discretion to dismiss solely on that basis unless "leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Thus, Komatsu will be granted leave to replead all claims that are not dismissed with prejudice, as set forth in more detail below.  However, for any claims that Komatsu re-pleads, he must abide by the conditions set forth in Section III.D, *infra*, which addresses both the requirements of Rule 8 and his repeated objectionable conduct in this case.

### B.  Claims against the City of New York

The Court discusses the arguments raised by Defendants under Rule 12(b)(6) in their motions to dismiss below.  While the Court will dismiss all nine of Komatsu's complaints under Rule 8 without prejudice to file a consolidated amended complaint, it provides the following discussion to identify several claims that will be dismissed with prejudice because they are

---

[5] The Court acknowledges that, in this and in other complaints, Komatsu sometimes does more to tie a given claim to a portion of the facts alleged—for example, in Claim 19, "Conspiracy to Violate Civil Rights and Cover-Up Such Abuse," he notes that "My claims that concern a cover-up are due to the fact that the microphones were turned off in the room in which I briefly testified to the City Council's Committee on Oversight and Investigations on 11/13/19 between the time when I was coerced to leave that room and that hearing ended."  However, such elaboration is the exception, not the rule:  The Court is generally left to guess exactly how hundreds of pages of allegations might support a particular claim.

frivolous on their face, as well as to provide guidance regarding applicable legal standards if Komatsu re-pleads. *See Salahuddin*, 861 F.2d at 42 (noting that *pro se* complaints should generally not be dismissed with prejudice under Rule 8 unless "the substance of the claim pleaded is frivolous on its face"); *see also Robinson*, 1999 WL 225938, at *2–4 (dismissing under Rule 8 without prejudice, and providing guidance regarding which claims were frivolous in the event plaintiff re-pleaded).

### i. First Amendment Claims

Komatsu alleges various First Amendment violations regarding at least sixteen public events. When a plaintiff alleges that their speech has been restricted on government property, the Court uses a "forum based" approach. *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Rec.*, 311 F.3d 534, 544 (2d Cir. 2002). Under this approach, the amount of constitutional scrutiny applied to the Government's actions depends on the type of public forum involved. The categories of public fora are: (1) traditional public fora, which have "traditionally been available for public expression," such as streets and sidewalks, (2) designated public fora, which are "non-public [fora] that the government has opened for all types of expressive activity," or limited public fora, in which a government opens its property to a certain class of speakers or to speakers on certain topics, and (3) remaining public property. *Id.* at 545–46.

The City argues that each event at issue here occurred at a limited public forum, because in each case, the City opened a space to certain types of expression and/or expression by certain speakers. In a limited public forum, "strict scrutiny is accorded only to restrictions on speech that falls within the designated category for which the forum has been opened." *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y.*, 311 F.3d at 545. For categories of speech outside of that

for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable. *Id.* However, once the government "allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991).

It is well-established that legislative hearings are typically considered limited public fora. *See City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976) ("[P]ublic bodies may confine their meetings to specified subject matter."); *see also Smith v. City of Middletown*, No. 09 Civ. 1431 (JCH), 2011 WL 3859738, at *4 (D. Conn. Sept. 1, 2011) ("Numerous courts have held that city council meetings which have been opened to the public are limited public fora."). Similarly, the town hall and resource fair events referenced in Komatsu's allegations have been held to be limited public fora in Komatsu's prior litigation. *See Komatsu v. City of New York*, No. 18 Civ. 3698 (LGS), 2019 WL 4805904, at *4, *6 (S.D.N.Y. Sept. 30, 2019) (noting that town halls were limited public fora because "[t]he Government opened this forum to public expression for the limited purpose of allowing attendees to hear the Mayor speak and, potentially, ask the Mayor questions," and that resource fairs are limited public fora because they "allow[] New York residents to meet with top city commissioners and senior staff during scheduled office hours to address . . . questions and concerns.").

Thus, all allegations regarding town hall meetings, resource fairs, public comment sessions on legislation, and City Council committee meetings are properly analyzed under the limited public forum approach.[6] *See, e.g.*, Case No. 8004 Ex. A (showing a poster for a town

---

[6] Komatsu has argued that some of the town hall meetings were traditional public fora because Mayor de Blasio told the audience at the October 26, 2017 town hall that they could stay after the meeting and ask government personnel questions about issues that had not yet been raised. Doc. 132 at 10. However, while this comment may have prolonged that particular town hall, Komatsu cites no authority to show that such a comment is sufficient to change the underlying nature of the public forum, which still existed for constituents to ask questions of their elected officials. The same reasoning applies to other town halls at which Mayor de Blasio is alleged to have made similar

hall with Mayor de Blasio, presented by certain councilmembers); Case No. 8540 Ex. A

(showing a poster for a borough resource fair, advertising an opportunity to "[m]eet with top city

commissioners and senior staff during scheduled office hours to address . . . questions and

concerns." *See also* Doc. 89 at 3 (noting that a virtual City Council meeting was a limited public

forum and denying Komatsu's preliminary injunction request). Regarding these claims,

Komatsu is reminded that he must still allege facts to support the inference that his

whistleblowing activities fell within the appropriate parameters of the public forum in question.

*See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 820 (1995)

("[V]iewpoint discrimination . . . is presumed impermissible *when directed against speech*

*otherwise within the forum's limitations*.") (emphasis added).

However, to the extent Komatsu raises claims regarding being barred from attending an

October 3, 2017 press conference on the steps of City Hall, on the facts alleged such restrictions

would be subject to a traditional public forum analysis. *See Housing Works, Inc. v. Safir*, 101 F.

Supp. 2d 163, 167 (S.D.N.Y. 2000) ("The steps and plaza of City Hall are by their very nature,

quintessential public forums."). In such a forum, the Government may impose reasonable

"restrictions on the time, place, or manner of protected speech, provided the restrictions 'are

justified without reference to the content of the regulated speech, that they are narrowly tailored

to serve a significant governmental interest, and that they leave open ample alternative channels

for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791

(1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).

---

remarks. *See, e.g.*, Case No. 8004 at 187–88 (noting similar comments by Mayor de Blasio at a September 28, 2017 town hall).

As previously discussed, Komatsu's complaints will be dismissed in full based on Rule 8. He will, however, be permitted to re-plead his First Amendment claims. The facts of each event appear to vary, but, with clearer pleading, it is conceivable that he could allege plausible First Amendment violations based on such fact patterns, and thus the Court cannot say that the claims are frivolous. *Cf. Komatsu*, 2019 WL 4805904, at *4 (denying motion to dismiss in a prior case when Komatsu alleged that he was barred from entering a town hall for criticizing an elected official's policies).

Similarly, Komatsu will be permitted to re-plead his First Amendment retaliation claims. A plaintiff alleging a First Amendment retaliation claim must show that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Because determination of the first prong is subject to the forum analysis described above, Komatsu may also raise these allegations in any consolidated amended complaint. However, in doing so, he must briefly set forth the prior conduct that he believes was protected by the First Amendment and that forms the basis of the retaliation; a conclusory statement that he has engaged "protected whistleblowing" in the past will be insufficient. *See, e.g.*, Case No. 7046 at 47; *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (noting that a retaliation claim that is wholly conclusory may be dismissed on the pleadings).

### ii. Fourteenth Amendment Claims

The City argues that Komatsu's selective enforcement claims must be dismissed. To state a claim for selective enforcement, a Plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was

based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980).[7] Here, Komatsu appears to allege that his exclusion from public meetings was a selective enforcement violation because such expulsion only happened to him and/or was done in bad faith. *See e.g.*, Case No. 7046 at 86 (alleging that his expulsion from the August 30, 2017 town hall "violated my Fourteenth Amendment right to not be subjected to selective-enforcement that corresponds to the class-of-one legal theory and is based upon an illegitimate animus.").

So far as the Court can discern, Komatsu does not specifically allege that similarly situated individuals engaged in comparable behavior, but were treated differently by the City.[8] Thus, while Komatsu will be granted leave to re-plead these claims, failure to adequately allege the conduct of similarly situated individuals may lead to dismissal with prejudice.

### iii. Procedural Due Process Claims

To assess whether Komatsu has stated a procedural due process claim, a Court must first "determine whether a property interest is implicated, and then, if it is, determine what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019). To assess what process is due, the Court must apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (requiring consideration of (1) "the private interest that will be affected," (2) the "risk of an erroneous deprivation of such interest . . . and

---

[7] While Komatsu pleads equal protection and selective enforcement as separate causes of action, the Court construes Komatsu's equal protection allegations to be based on a selective enforcement theory, as it can discern no other non-frivolous basis for an equal protection claim.

[8] Komatsu also does not appear to address the City's arguments on this point in his response, arguably abandoning his claim. *See Wilkov v. Ameriprise Fin. Servs. Inc.*, 753 F. App'x 44, 47 n. 1 (2d Cir. 2018) (claim abandoned when it was not addressed in a *pro se* plaintiff's opposition to a motion to dismiss).

. . . probable value, if any, of additional or substitute procedural safeguards," and (3) the "Government's interest.")

Here, however, Komatsu's claim fails at the first step, because—while he alleges that his First Amendment rights were violated, he nowhere alleges that he was deprived of any property interest that would trigger procedural due process protections. While Komatsu has at times invoked *Goldberg v. Kelly*, a case addressing constitutional due process requirements prior to the termination of welfare benefits, the *Goldberg* court's statement that due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner" refers to the government's obligations prior to the deprivation of a property interest, not a free-standing right to be "heard" at limited public fora. *See* 397 U.S. 254, 267 (1970); *see also* Case No. 8540 at 227 (citing *Goldberg*). Rather, any claims predicated on his right to be heard at public fora are properly analyzed under the First Amendment, not as procedural due process claims. Thus, all procedural due process claims are dismissed with prejudice.

### iv.  Abuse of Process

Komatsu also alleges that the events underlying this action constitute a malicious abuse of process. To state a claim for abuse of process, a plaintiff must allege that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, the first prong requires the institution of some legal procedure, either civil or criminal. *See Bd. of Educ. v. Farmingdale Classroom Teachers Assn.*, 38 N.Y.2d 397, 400–01 (1975). Komatsu has not alleged that the City or any individual defendants instituted legal process against him regarding these events; rather, he simply alleges

18

that various restrictions were placed on his ability to attend and/or testify.  Thus, all abuse of process claims must be dismissed with prejudice.

### v. State Law Claims

Komatsu alleges various state law torts against the City in each complaint.  Under N.Y. Gen. Mun. Law § 50–i, any such claim must be brought against the City within one year and ninety days.  The provision applies to "not only to claims against municipalities, but also to suits against officer[s], agent[s] or employee[s] whose conduct caused the alleged injury."  *See Warner v. Village of Goshen Police Dep't*, 256 F. Supp. 2d 171, 174 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).   With the exception of claims arising out of the March 18, 2019 Blue Room hearing and the November 13, 2019 City Council hearing, all other state law tort claims are time-barred under Gen. Mun. Law § 50–i.  *Id.*  These encompass claims alleging the following against the City and its employees:

- Fraudulent Misrepresentation and Fraudulent Inducement
- Negligence
- Intentional and Negligent Infliction of Emotional Distress
- Unjust Enrichment
- Public and Private Nuisance
- Spoliation of Evidence
- Defamation
- Assault

Therefore, all of the above-referenced claims stemming from the 2017 incidents are dismissed with prejudice.

Moreover, Komatsu does not allege defamation or assault claims stemming from the two 2019 incidents. Thus, all defamation and assault claims are dismissed with prejudice as time-barred.

The Court will also *sua sponte* dismiss the remaining tort claims (i.e., those regarding the 2019 events alleged in Case Nos. 8540 and 9154), as it is clear that Komatsu cannot possibly state a claim on any of these bases.

*First*, the complaints allege no exchange between Komatsu and the City or its employees, financial or otherwise, that could possibly provide the basis for an unjust enrichment claim. *See Schatzki v. Weiser Cap. Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014) ("To establish a defendant's liability for unjust enrichment, the plaintiff must prove, by a preponderance of the evidence, that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.") (internal citation and quotation marks omitted). Thus, all unjust enrichment claims must be dismissed with prejudice.

*Second*, Komatsu's claims for fraudulent inducement and fraudulent misrepresentation identify no statement by any defendant regarding either 2019 event that could provide the basis for either claim. Komatsu frequently characterizes statements by defendants as "fraudulent,"—such as one defendant's claim that Komatsu "couldn't present recordings in conjunction with [his March 18, 2019] testimony" or Torres' statement that Komatsu had no right to testify in front of the City Council if he did not comply with its rules. Case No. 8540 at 282; Case No. 9154 at 153. However, even assuming that these were false or misleading statements, Komatsu has alleged no basis on which the Court could infer that he relied on such statements and suffered damage as a result. *See Ind. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157

F.3d 933, 940 (2d Cir. 1998) (to state a fraudulent misrepresentation claim, a plaintiff must allege that "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance"); *see also Robinson v. Deutsche Bank Trust Co.*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008) ("Under New York law, to sustain a claim for fraudulent inducement a plaintiff must successfully allege (1) a knowingly false representation of a material fact and (2) detrimental reliance thereon.") (internal citation and quotation marks omitted). On the contrary, Komatsu has made it clear that he has disagreed with these allegedly fraudulent statements from the beginning. Thus, all fraud claims must be dismissed with prejudice.

*Third*, Komatsu states no claim for public or private nuisance. Regarding public nuisance, Komatsu makes no allegations that could support an "interference with a public right," which occurs "when the health, safety, or comfort of a considerable number of persons in New York is endangered or injured, or the use *by the public* of a public place is hindered." *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 3d 435, 448 (E.D.N.Y. 2003) (emphasis added). Rather, the thrust of Komatsu's arguments is that defendants conspired to violate *his* rights specifically, not that the City has created a broader danger to public welfare. His claim for private nuisance also fails because he alleges no "interference . . .with [his] property rights to use and enjoy land." *Scribner v. Summers*, 84 F.3d 554, 559 (2d Cir. 1996) (citation omitted). Rather, the underpinning of Komatsu's claims is that the alleged mistreatment occurred on public property. Komatsu's nuisance claims are therefore dismissed with prejudice.

*Fourth*, Komatsu states no claim for negligence. It is unclear what actions by the City he believes were negligent, and the Court can identify no non-frivolous basis for a negligence claim in Case Nos. 8540 and 9154. All negligence claims are dismissed with prejudice.

*Fifth*, Komatsu alleges no activity that could provide a basis for his claims for infliction of emotional distress. Regarding the claim for negligent infliction of emotional distress ("NIED"), he alleges no facts to suggest that Defendants "[were] negligent in creating an unreasonable risk of bodily harm" to him, nor that such conduct was a substantial factor in bringing about any injury. *See Siben v. American Airlines, Inc.*, 913 F. Supp. 271, 279 (S.D.N.Y. 1996) (citation omitted).

Regarding his intentional infliction of emotional distress ("IIED") claim, he must allege the following: "(1) an extreme and outrageous act by the defendant, (2) intent by the defendant to inflict severe emotional distress, (3) resulting in severe emotional distress, (4) and that the distress be caused by the defendant's conduct." *Id.* To meet the first requirement under New York law, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quotation marks and citation omitted). While Komatsu's allegations do not explicitly tie his IIED claim to any of Defendants' conduct, viewed in the light most favorable to Komatsu he alleges that (1) various defendants cut short his testimony, prevented him from playing a video, and removed him from the Blue Room meeting in March 2019; that (2) several NYPD officers followed him out of City Hall to ensure he left its premises after this meeting; and that (3) Torres cut short his testimony and mocked him in November 2019. *See generally* Case No. 8540 at 216–282; Case No. 9154 at 143–167. Assuming these allegations are true, they do not rise to the

level of extreme and outrageous conduct sufficient to support an IIED claim. *See, e.g.*, *Biberaj v. Pritchard Indus.*, 859 F. Supp. 2d 549, 557, 565 (S.D.N.Y. 2012) (supervisors' repeated direction of profanities at employee, including calling her a "[b]itch, slut, [and] whore," were insufficiently extreme and outrageous); *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008) (publicly shouting derogatory remarks and hitting plaintiff multiple times with a telephone was insufficiently extreme and outrageous). Komatsu's NIED and IIED claims are therefore dismissed with prejudice.

*Finally*, Komatsu has also brought claims against some individual defendants for "spoliation of evidence," which appear to be based on the failure to provide materials pursuant to New York's Freedom of Information Law ("FOIL"). *See, e.g.*, Case No. 7046 at 98. However, New York does not recognize spoliation of evidence as an independent tort. *See Ortega v. City of New York*, 9 N.Y.3d 69, 83 (2007). Therefore, the Court construes all spoliation of evidence claims as alleged violations of FOIL. These are discussed below.

### vi. Violation of the New York Freedom of Information Law

Komatsu has sued several individual defendants for alleged violations of FOIL. *See* Case Nos. 7046, 8540. However, the appropriate mechanism for challenging a determination under FOIL is through a state court proceeding pursuant to N.Y. C.P.L.R. Article 78, after the exhaustion of administrative remedies. *See Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 12 Civ. 6054 (JS)(AKT), 2013 WL 4719090, at *3 (E.D.N.Y. Sept. 3, 2013). There is a 30-day period to administratively appeal the denial of a FOIL request, and a four-month statute of limitations for initiating Article 78 proceedings following a final determination. *See* N.Y. Pub. Off. Law § 89(4); *United Prob. Officers Ass'n v. City of New York*, 187 A.D.3d 456, 456 (1st Dep't 2020). Komatsu's allegations come far past these appropriate time periods. *See* Case No.

7046 at 74–75 (showing the denial of Komatsu's FOIL request on September 15, 2017, nearly three years before his case was filed); Case No. 8540 (showing the denial of Komatsu's administrative appeal of a FOIL request on May 2, 2019, over one year before the case was filed).

Moreover, as discussed in more detail *infra*, even if these claims were not time-barred, courts in this district have generally declined to exercise supplemental jurisdiction over Article 78 claims and in some cases have ruled that they are prohibited from doing so. *See Morningside Supermarket Corp. v. New York State Dept. of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006). Finally, "FOIL does not give rise to a private cause of action to recover money damages." *Sank v. City Univ. of N.Y.*, No. 94 Civ. 0253, 2002 WL 523282, at *9 (S.D.N.Y. Apr. 5, 2002).

Therefore, Komatsu's claims based on denial of access to FOIL materials are dismissed with prejudice.

### vii. The City's Remaining Arguments

The City notes that, in each of the complaints, Komatsu names "a plethora of individuals as defendants without pleading sufficient personal involvement." Doc. 104-1 at 17. While he will be granted leave to replead, Komatsu is instructed that he must allege a specific factual basis for the Court to infer that *each defendant named* in any consolidated amended complaint was "personally involved" in the alleged deprivation of his rights to state a § 1983 claim for damages. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Merely alleging that a defendant was present, without alleging facts supporting their direct participation in the Constitutional violation (or—in the case of failure to intervene claims—without alleging that the

24

defendant had personal knowledge of the violation and a realistic opportunity to prevent it) will be insufficient and subject all claims against that defendant to dismissal with prejudice.

The City also argues that Komatsu's allegations of municipal liability under *Monell* are insufficient on several grounds.  Doc. 104-1 at 20–24.[9]  As with his First Amendment claims, Komatsu will be granted leave to re-plead, as the Court cannot determine at this stage that the claims are frivolous.  *Cf. Komatsu*, 2019 WL 4805904, at *7 (denying the City's motion to dismiss based on municipal liability stemming from Komatsu's alleged exclusion from public events).

### viii.   Claims Not Addressed by the City

Komatsu has raised several claims that were not addressed at all in the City's motion to dismiss.  These are:  Fourth Amendment violations;  Fifth Amendment violations;  Fourteenth Amendment substantive due process violations;  violations of New York's Open Meetings Law;  violations of New York's General Business Law § 349;  conspiracy to violate civil rights;  violations of the Hatch Act; and spoliation of evidence (discussed above).

The City has not directly addressed his claims for Fourth Amendment violations or conspiracy to violate his civil rights.  Because the Court cannot conclude at this stage that these claims are frivolous, he will be granted leave to re-plead them.  However, the Court will *sua sponte* dismiss the remaining claims because they are clearly deficient.

Fifth Amendment Violations

Komatsu raises Fifth Amendment claims in each of his complaints, but does not specify under what clause he raises these causes of action.  The only conceivable basis for a Fifth Amendment claim could be under its due process clause.  However, because Komatsu does not

---

[9] The Court construes all causes of action entitled "Failure to Train and Supervise" and "Municipal Liability" to raise *Monell* claims against the City.

sue any federal officials, his due process claims are properly brought through the Fourteenth Amendment's due process clause, rather than through the Fifth Amendment. Komatsu's Fifth Amendment claims are therefore dismissed with prejudice.

Substantive Due Process Violations

To adequately plead a substantive due process violation, a plaintiff must allege: "(1) the infringement of a right protected by substantive due process; and (2) that the conduct of the state actor was sufficiently 'egregious' or 'outrageous' to rise to the level of a constitutional violation." *Davis v. New York City Housing Auth.*, 379 F. Supp. 3d 237, 252 (S.D.N.Y. 2019) (internal citation omitted).

Komatsu has not explicitly alleged what right protected by substantive due process he believes was infringed. In the three complaints in which he has provided more specific factual support for these causes of action, he references: his inability to testify at or access certain areas of public meetings on August 30, September 8 and September 14, 2017 to distribute whistleblowing literature, and other City Council members' alleged failure to intervene when his testimony at the November 13, 2019 meeting was cut short. *See* Case No. 7046 at 84; Case No. 7502 at 145; Case No. 9154 at 174. While these facts may support First Amendment violations or failure to intervene claims, they do not plausibly support a substantive due process violation because Komatsu has not identified any property interest—or any other interest "implicit in the concept of ordered liberty" such as the "right to marry, the right to have and raise children, or the right to bodily integrity"—that was violated by the City's alleged actions. *See Smith v. Hogan*, 794 F.3d 249, 255–56 (2d Cir. 2015) (citations omitted). His substantive due process claims are therefore dismissed with prejudice.

<u>Open Meetings Law Violations</u>

Under New York's Open Meetings Law, "[a]ny aggrieved person shall have standing to enforce the provisions of this article against a public body by the commencement of [an Article 78 proceeding]." N.Y. Pub. Off. Law § 107(1). An Article 78 proceeding is a special type of New York state court proceeding that is typically used to review the decision of a state or local agency. While there is no binding Second Circuit case on the issue, several courts in this Circuit have expressed doubt regarding whether federal courts may exercise supplemental jurisdiction over Article 78 claims. *See, e.g.*, *Morningside Supermarket Corp. v. New York State Dept. of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006); *see also Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("This claim must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims."). In *Morningside Supermarket*, the court noted that even if it had subject matter jurisdiction over the plaintiff's Article 78 claim, the fact that Article 78 proceedings "were designed for the state courts" as a "novel and special creation of state law" constituted a compelling basis for declining to exercise its supplemental jurisdiction. 432 F. Supp. 2d at 346–47.

Numerous other courts have followed suit and similarly declined to exercise such jurisdiction, citing comity interests and the unique nature of Article 78 proceedings. *See Coastal Commcn's Serv., Inc. v. City of New York*, 658 F. Supp. 2d 425, 460 (E.D.N.Y. 2009) (collecting cases). Indeed, the only two courts in this district to have explicitly exercised jurisdiction over such claims have themselves acknowledged the unusual circumstances of their decisions. *See Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 864 (2d Cir 1988) (affirming the district court's exercise of jurisdiction under the All Writs Act in an "extraordinary" case); *Cartagena v.*

*City of New York*, 345 F. Supp. 2d 414, 426 (S.D.N.Y. 2004) (exercising supplemental jurisdiction only after both parties consented to it to avoid duplicitous litigation).  The Court will follow the weight of authority in this District and decline to exercise jurisdiction over Komatsu's Open Meeting Law claims.[10]  They are therefore dismissed with prejudice.

New York General Business Law Claims

New York Gen. Bus. Law § 349(a) prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  To state a claim under § 349, a plaintiff must allege conduct that is "consumer-oriented."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Komatsu's general business law claims appear to be predicated on the same exclusion from and/or restrictions to his testimony at public fora discussed above, as well as the same facts as the alleged FOIL violations previously discussed.  *See, e.g.*, Case No. 7046 at 90–91.  However, Komatsu fails to allege that such conduct is "consumer oriented," aside from the statement that "Defendant City is a corporation."  Case No. 7046 at 91.  Because he has not alleged any consumer-oriented conduct performed by the City or its employees, all § 349 claims must be dismissed.  *Cf. Kinkopf v. Triborough Bridge & Tunnel Auth.*, 792 N.Y.S. 2d 291, 292 (N.Y. App. Term 2004) (dismissing § 349 claim regarding toll collection, finding that mere tax collection by the state did not rise to the level of a consumer-oriented transaction).

---

[10] The Court also notes that these claims are almost certainly time-barred.  Article 78 proceedings must be commenced within four months after the determination to be reviewed.  See N.Y. C.P.L.R. § 217.  For Open Meetings Law claims, the statute begins to run from "the date the minutes of such executive session have been made available to the public."  N.Y. Pub. Off. Law § 107(1).  The specific dates that minutes from these events became public are not before the Court.  However, each of these events occurred approximately one year to three years before Komatsu's cases were filed; therefore, these claims could only be timely if there were a delay of several months or even years between the meeting dates and the subsequent public release of meeting minutes.

<u>Hatch Act Violations</u>

The Hatch Act is a federal law that limits the political activities of federal employees. *See Burrus v. Vegliante*, 336 F.3d 82, 85 (2d Cir. 2003). It applies to certain state employees who work in federally financed programs. *See U. S. Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 551 n.2 (1973). However, "[p]ursuant to the Civil Service Reform Act of 1978, violations of the Hatch Act are investigated and prosecuted by the Merit System Protection Board's Office of Special Counsel and charges of such violations are adjudicated by the Board." *Biller v. U.S. Merit Systems Protection Bd.*, 863 F.2d 1079, 1081 (2d Cir. 1988). The government has exclusive enforcement authority over Hatch Act violations; thus there is no private right of action for Komatsu to enforce it. *See Hall v. Clinton*, 285 F.3d 74, 83 (D.C.C. 2002); *see also NaPier v. Baldacci*, 451 F. Supp. 2d 256, 261 (D. Me. 2006). Komatsu's Hatch Act claims are therefore dismissed with prejudice.

**C. Claims against D.A. Vance**

Komatsu alleges various § 1983 claims against Vance based on his failure to intervene to "end the NYPD's illegal practice of preventing me from attending public forums." Case No. 8251 at 41. *See also* Case Nos. 8540, 8933, 9151, and 9354 (bringing the same allegations against Vance). These claims must be dismissed with prejudice.

First, nearly all of Komatsu's claims against Vance are insufficient because he has not alleged that Vance had any personal involvement in any alleged violations of his constitutional rights. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (personal involvement in a constitutional deprivation is a prerequisite to an award of damages). Komatsu's claims against Vance arise from a question and answer session at a New York City Bar Association Meeting, in

which Komatsu requested that Vance prevent the NYPD from discriminating against him and take action against those who had violated his rights.

Based on these factual allegations, the only cause of action in which Vance could have conceivably had any personal involvement is Count 9, "Failure to Intervene."  It is true that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  However, to adequately plead a failure to intervene claim, a plaintiff must allege that the law enforcement officer "observes or has reason to know" of the constitutional violation, and that "there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Id.*

No such reasonable opportunity could have possibly occurred here, because (1) Komatsu's conversation with Vance took place during a question and answer session at a New York City Bar Association Meeting, not at any event from which Komatsu was denied entry or at which he was restricted from testifying; and (2) there is no factual basis to suggest that Vance observed or had reason to know of any preventable constitutional violation; indeed, Vance stated at the meeting that he "did not know" if the actions described by Komatsu constituted crimes. Case No. 8251 at 42.[11]  Thus, it is simply not plausible, based on this exchange of less than two minutes, that Vance would have any reason to know of any constitutional violation or could have taken steps to prevent it.  Nor is there any indication that Vance knew which public events

---

[11] Komatsu links to audio from the event, which is available at https://www2.nycbar.org/mp3/Podcasts/media/police-officer-testimony-panel-2017-10-03.mp3.  *See* Case No. 8251 at 42.  The Court considers the audio to be incorporated by reference into the Complaint.  *See Komatsu*, 2019 WL 4805904, at *8 (considering videos incorporated by reference into a complaint when defendants did not object) (citing *Garcia v. Does*, 779 F.3d 84, 87–88 (2d Cir. 2015)).  However, regardless of whether the Court relies on the audio footage in conjunction with Komatsu's written complaint, or relies solely on the written complaint, he fails to state a claim.

Komatsu intended to attend in the future.[12]  While Komatsu argues that Vance could have still "testified" or spoken publicly about these incidents to advocate for change to the NYPD's behavior, *see* Case No. 8251, Doc. 49 at 11–13, the law imposes on Vance no duty to opine on such matters.  In short, Komatsu's theory is based on an assumption that a prosecutor is liable for failure to intervene anytime that (1) anyone in their presence alleges a law has been violated, and (2) the prosecutor does not make an arrest or initiate some other form of enforcement activity.  This theory is untenable, and is in direct tension with the concept of prosecutorial discretion.

Moreover, to the extent Komatsu alleges that Vance failed to prosecute various City officials for their alleged actions in this case, Vance's actions are also protected by absolute immunity.  *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989) (a prosecutor's decision not to bring charges is protected by absolute prosecutorial immunity).[13]  While Komatsu correctly points out that absolute prosecutorial immunity does not bar claims for injunctive relief, the only injunctive relief he seeks against Vance is the issuance of "an order that causes [Vance] to be fired or suspended as Manhattan's District Attorney" and that Vance should be "permanently banned from working for the City of New York again."  Case No. 8251, Doc. 49 at 13.  In light of the facts alleged, this request for injunctive relief is patently frivolous and could not possibly meet the applicable four-factor test for a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (to secure a permanent injunction, "[a] plaintiff must demonstrate:  (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

---

[12] As Vance points out in his opening brief, even if he were aware of the town hall meeting on October 4, 2017 that Komatsu alleges he was prevented from attending, this event took place in the Bronx and thus Vance would have had no jurisdiction to prosecute actions arising from it.  *See* Case No. 8251 at 6; Case No. 8251, Doc. 40-1, at 9.

[13] Claims against Vance in his official capacity for damages are also barred by eleventh amendment immunity.  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (damages claims against Manhattan D.A. regarding whether to bring charges were barred by the eleventh amendment).

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

Because Komatsu's remaining requests for damages and retrospective declaratory relief are barred by absolute immunity and otherwise fail to allege personal involvement, all claims against Vance are dismissed with prejudice.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (permitting denial of leave to re-plead in cases of "bad faith or dilatory motive" or futility of amendment).

### D.  Conditions for Filing an Amended Complaint

#### i.  Rule 8 Compliance

If Komatsu decides to file a consolidated amended complaint, it must comply with the following requirements:

- The Complaint may not allege claims that have been dismissed with prejudice as set forth in this order.  These claims are:

    - All substantive and procedural due process allegations;

    - All § 1983 abuse of process allegations;

    - All Fifth Amendment allegations;

    - All state law allegations, which encompass:

        - Fraudulent Misrepresentation and Fraudulent Inducement

        - Negligence

        - Intentional and Negligent Infliction of Emotional Distress

        - Unjust Enrichment

        - Public and Private Nuisance

        - Spoliation of Evidence/FOIL violations

- Defamation

- Assault

- New York General Business Law § 349

- New York Open Meetings Law

  o All Hatch Act allegations;

  o All allegations against Vance

- Komatsu is granted leave to re-plead the following claims, except as to Vance:

  o Claims alleging First Amendment violations and First Amendment retaliation;

  o Claims alleging selective enforcement violations;

  o Claims alleging failure to intervene;

  o Claims alleging *Monell* liability;

  o Claims alleging Fourth Amendment violations;

  o Claims alleging conspiracy to violate civil rights.

The consolidated amended complaint must be a single document filed under Case No. 20 Civ. 7046 and must not exceed 50 pages, exclusive of any exhibits. Any such consolidated amended complaint must be filed by August 30, 2021.

If Komatsu fails to comply with the limitations set forth in this order, his complaint will be subject to dismissal with prejudice under Fed. R. Civ. P. 41(b) for failure to comply with a court order. While he has been granted leave to file a 50-page consolidated amended complaint in this case, the filing restrictions set forth in the Court's December 15, 2020 order will otherwise remain in place. *See* Doc. 45.

### ii. Plaintiff's Conduct in this Case

While the Court will grant Komatsu an opportunity to re-plead to meet the requirements of Rule 8, it also takes this opportunity to note his repeated troublesome conduct in this case. Komatsu is hereby warned that continuing any of the behavior described below may result in sanctions, including dismissal of this case with prejudice pursuant to the Court's inherent authority to sanction vexatious litigants. *See Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992).

### 1. Personal Attacks and Baseless Accusations of Illegal Conduct

Soon after this case was filed, Komatsu filed a 20-page letter requesting that Magistrate Judge Gorenstein be recused from the case, claiming that Judge Gorenstein had "repeatedly and personally committed illegal, unconscionable, and unethical acts and omissions against me." Doc. 10 at 1. These purported acts appear to have stemmed from prior orders from Judge Gorenstein in another of Komatsu's cases, Case No. 18 Civ. 3698. After the Court denied his request to designate a different magistrate judge, Komatsu filed a 30-page letter addressed to the Court and then-Chief Judge McMahon, requesting reconsideration of the order and recusal of Judge Gorenstein, alleging without basis that Judge Gorenstein was not assigned to this case randomly. Doc. 14 at 1–2. The letter included lengthy descriptions of past altercations with court security personnel, as well as numerous screenshots pertaining to various events throughout spring and summer 2017, including disputes with the City's HRA. *Id.* at 4, 21–24.

The Court denied his request for reconsideration on October 22, 2020, after which Komatsu continued to press this issue, filing three additional letters regarding his dissatisfaction with Judge Gorenstein's assignment. *See* Docs. 16–19. As the case has progressed, Komatsu has periodically filed letters objecting to Judge Gorenstein's designation on this case, as well as

actions Judge Gorenstein has taken in other cases.  *See, e.g.*, Doc. 39 at 2–3 (arguing that the relevant statute of limitations should not apply to him due to "utter nonsense and harassment that I've had to deal with thanks to entirely vile Judge Schofield and Judge Gorenstein . . . on account of their negligence . . ."); Doc. 114 at 1 (letter requesting that Judge Gorenstein overturn a discovery order issued in Case No. 18 Civ. 3698, which was not before the court);[14] Doc. 117 (34-page letter requesting the same relief, as well as raising several grievances regarding his state court litigation);  Doc. 162 (requesting Judge Gorenstein's recusal).

In addition to the above-referenced campaign against Judge Gorenstein, Komatsu has leveled similar accusations of impartiality or misconduct against at least Judge Caproni, Judge Schofield and Judge McMahon, *see* Doc. 173 at 2, as well as counsel for the City.  *See* Doc. 165. Just recently, Komatsu copied the Court on a July 2, 2021 letter to Judge Caproni, referring to her as "trash" and "an utterly despicable con artist."  Doc. 179.  Komatsu is instructed to immediately cease making personal attacks of this sort, whether against the Court, other judges, or other parties or counsel in this case.

### 2.  Inappropriate or Harassing Language

As alluded to above, many of Komatsu's letters have also included inappropriate and harassing language.  For example, in Komatsu's March 17, 2021 letter seeking relief from Judge Gorenstein's discovery order, he calls one individual a "stupid bitch" who is "far too stupid and lazy to understand the point [he] just made."  Doc. 117 at 21.  In addition to the insulting language toward other judges in this district described above, Komatsu has also at times used similar language towards the Court.  *See, e.g.*, Doc. 85 (arguing that the Court "fucked up" and

---

[14] Komatsu filed this letter jointly in this consolidated case, as well as in another case that has not been marked as related.  He has done this regarding several of the filings at issue in this opinion, sometimes filing the same letter in up to four cases.  *See, e.g.*, Doc. 165.

acted "stupidly and fraudulently");  Doc. 143 (referring to the Court as an "idiot" and "trash" that must "recuse [itself] from this case now!").  Komatsu is instructed to immediately cease using unnecessary and inappropriate language.

### 3.  Repeated Frivolous Requests for Injunctive Relief

Komatsu has repeatedly used this litigation as a platform to make requests for broad injunctive relief that has little, if anything, to do with this case.  These have included requests for:  (1) an exemption from New York's electioneering laws so that he may draw public attention to his litigation efforts, *see* Doc. 18 at 5;  (2) an order declaring Defendant Harold Miller's City Council candidacy to be illegal, *see* Doc. 136 at 1;  (3) the removal of outdoor dining structures from public sidewalks, *id.*;  (4) an order to prevent sixteen individuals who "mostly aren't defendants in this consolidated case," from being elected to public office and permanently barred from further employment in New York,  Doc. 138 at 1; (5) various procedural changes to all City Council meetings, including that they all be conducted in person, Doc. 145, and (6) "ordering an immediate overhaul of the New York City Mayor's Office administration by installing a temporary caretaker system to act in concert with this Court for the job of New York City Mayor and . . . immediate special elections to replace the City of New York's entire administration." *See* Doc. 141 at 1.

Moreover, many of these requests for injunctive relief came after the Court denied Komatsu's preliminary injunction request.  *See* Doc. 89.  Since the Court's January 26, 2021 order denying him preliminary injunctive relief, Komatsu has filed at least seventeen subsequent requests for injunctive relief or requests to reconsider injunctive relief previously denied.[15]  Most

---

[15] *See* Docs. 94, 98, 112, 113, 118, 119, 120, 131, 136, 138, 139, 141, 144, 145, 160, 166, 176.  An additional request was filed the same day as the Court's preliminary injunction decision.  *See* Doc. 93.

of these requests have occurred after Komatsu's request for reconsideration of the January 26, 2021 order had been denied, and after the time to move to reconsider under local rule 6.3 had passed.[16]  Moreover, since the Court's April 26, 2021 order warning him against seeking injunctive relief against individuals not named as defendants, Komatsu has nevertheless sought an injunction against the U.S. Marshals Service and "all federal court security officers."  *See* Doc. 172.

### 4.  Future Conduct

Federal district courts have "inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *see also Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) (affirming dismissal of complaint based on repeated use of "offensive, abusive, and insulting language").  The Court has provided the foregoing list of vexatious litigation conduct to give Komatsu fair notice that, if he continues any of the activities described above, this case may be subject to dismissal under the Court's inherent authority to sanction bad faith litigants.  *See Mickle v. Morin*, 297 F.3d 114, 126 (2d Cir. 2002) (requiring notice and an opportunity to be heard prior to the imposition of sanctions).  As set forth in more detail above, objectionable conduct that could lead to dismissal includes (1) filing letters with inappropriate or harassing language, or that make baseless allegations against the Court, other judges in this District, or counsel; (2) filing successive requests for injunctive relief that have already been denied, or (3) seeking injunctive relief

---

[16] Komatsu's reconsideration requests are often accompanied by interlocutory appeals.  To date, he has filed eleven interlocutory appeal requests.  These have included challenges to (1) the Court's denial of his request to terminate Judge Gorenstein's designation, *see* Doc. 15; (2) the Court's denial of his request that it intervene in a discovery dispute in another case, Doc. 123, and (3) the Court's denial of injunctive relief and instruction that he stop requesting injunctive relief against individuals who are not defendants in the case, *see* Doc. 142.

regarding issues that are not before the Court, or against individuals or entities that are not defendants. Komatsu is also reminded of his continuing obligation to abide by the filing restrictions set forth in the Court's December 15, 2020 order. *See* Doc. 45.[17]

## IV.      CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. The following claims are dismissed with prejudice:

- o   All substantive and procedural due process allegations;

- o   All § 1983 abuse of process allegations;

- o   All Fifth Amendment allegations;

- o   All state law allegations, which encompass:

    - ▪   Fraudulent Misrepresentation and Fraudulent Inducement

    - ▪   Negligence

    - ▪   Intentional and Negligent Infliction of Emotional Distress

    - ▪   Unjust Enrichment

    - ▪   Public and Private Nuisance

    - ▪   Spoliation of Evidence/FOIL violations

    - ▪   Defamation

    - ▪   Assault

    - ▪   New York General Business Law § 349

    - ▪   New York Open Meetings Law

- o   All Hatch Act allegations;

- o   All allegations against D.A. Vance

---

[17] The Court has already once warned Komatsu that future violations of these restrictions could lead to dismissal. *See* Doc. 116.

Komatsu is granted leave to re-plead the following claims, except as to Vance:

- o Claims alleging First Amendment violations and First Amendment retaliation;

- o Claims alleging selective enforcement violations;

- o Claims alleging failure to intervene;

- o Claims alleging *Monell* liability;

- o Claims alleging Fourth Amendment violations;

- o Claims alleging conspiracy to violate civil rights.

As set forth above, if Komatsu fails to comply with the requirements set forth in this order, his complaint will be subject to dismissal with prejudice under Fed. R. Civ. P. 41(b) for failure to comply with a court order. The consolidated amended complaint must be a single document under Case No. 7046 and must not exceed fifty pages, exclusive of any exhibits. The filing restrictions set forth in the Court's December 15, 2020 order will otherwise remain in place. *See* Doc. 45. Komatsu must file this consolidated amended complaint by August 30, 2021.

The Clerk of Court is respectfully directed to terminate the following docket numbers:

- Doc. 104 in Case No. 20-cv-7046;

- Doc. 26 in Case No. 20-cv-7502;

- Doc. 42 in Case No. 20-cv-8004;

- Docs. 40 and 44 in Case No. 20-cv-8251;

- Doc. 27 in Case No. 20-cv-8540

- Doc. 27 in Case No. 20-cv-8933;

- Doc. 25 in Case No. 20-cv-9151;

- Doc. 25 in Case No. 20-cv-9154; and

- Doc. 27 in Case No. 20-cv-9354.

It is SO ORDERED.

Dated:    July 16, 2021
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.