To: U.S. Chief Judge Laura Taylor Swain
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: **a)** *Komatsu v. City of New York*, No. 21-cv-11115 (LTS) (S.D.N.Y. Sep. 16, 2022)

**b)** *Komatsu v. City of New York*, No. 22-cv-6627 (LTS) (S.D.N.Y. Aug. 15, 2022)

**c)** *Komatsu v. Ramos*, No. 22-cv-6076 (LTS) (S.D.N.Y. Aug. 15, 2022)

**d)** *Komatsu v. City of New York*, No. 22-cv-7046 (ER)(GWG) (S.D.N.Y. Jun. 6, 2023)

Thursday, June 15, 2023

Judge Swain,

I'm filing this letter to follow-up with you about your letter dated 8/1/21 to me that contains the following relevant text:

> I write in response to your August 7, 2021, letter that was filed in the dockets of the above actions, none of which is pending before me. Your requests for relief from generally-applicable Court security measures (including barriers and screening measures), and from the prohibition on photography and recording inside of the courthouse (see Local Civil Rule 1.8) are denied. Your request for reassignment of all of your cases is also denied. Any issues regarding specific events may be addressed in the context of a case if properly pleaded therein. Any issues

Prior to filing this letter, I submitted a separate one partly to you in which I apprised you about the material fact that hindsight confirms that you and other judges have illegally discriminated against me by virtue of the material fact that multiple people have been able to use electronic devices inside of the Daniel Patrick Moynihan courthouse ("DPM") to take photos or record videos while Ed Sheeran was there. Before that occurred, you opted to demonstrate your commitment to helping personnel of the U.S. Marshals Service ("USMS") and federal court security officers ("CSOs") to cover-up illegal and otherwise abusive acts and omissions against

me inside of DPM and the Thurgood Marshall federal courthouse ("TM") by discriminatorily **a)** not letting me keep my cell phone and laptop with me throughout my visits to those courthouses and **b)** use them partly to freely record video & audio recordings as well as to take photographs of my interactions with CSOs and USMS personnel in those courthouses outside of courtrooms to gather incontrovertible evidence for use partly in litigation and public hearings by government agencies. The fact that you fraudulently blocked me in that way necessarily means that you'll have to take my word about what I will discuss next that concerns a true and criminal threat that was communicated to me yesterday by a male CSO whose last name is Gilmore at roughly 11:30 am in a stairwell in DPM that demands an immediate criminal prosecution of him by a private prosecutor.

Yesterday, I talked with a female member of the USMS inside of DPM between roughly 11:45 am and 1 pm. We talked initially in the area on the first floor where CSO Ralph Morales illegally recorded a video of others and I on 9/21/18 by using an Apple Watch device that he wore on his left wrist. The following screenshot is from that video that included audio:



The woman who I talked with yesterday to whom I just referred identified herself to me strictly by her first name of Tiffany and told me that she is a Deputy U.S. Marshal. Although I asked her for her last name and told her that I intended to apprise you about the conversation that I had with her, she told me that she has previously dealt with you and that you would know who I'm talking about by giving you her first name. While talking with her then, I apprised her about the video that I just discussed that Mr. Morales illegally recorded. The primary reason why I talked with her then was because Mr. Gilmore made a verbal threat against me at roughly 11:30 am in a stairwell in DPM that connects the first floor to the second floor. The threat that he made then was that he would throw me down the stairs. He also cursed at me then. Upon hearing that, I immediately told him that I would promptly report that criminal threat to the USMS. He then began to lie by claiming that I had made a remark about throwing him down the stairs to engage in a criminal cover-up to avoid liability for his criminal threat against me. Sound familiar? This is extremely similar to the harassment and cover-ups by CSOs and USMS personnel that I have been experiencing since February of 2018 that you and other judges have been criminally aiding and abetting primarily through inaction in response to my timely, sufficiently detailed, and entirely truthful complaints.

After I left that stairwell to try to talk with a member of the USMS to report a valid complaint against Mr. Gilmore to have him immediately arrested and criminally prosecuted for reasons comparable to why I was maliciously prosecuted in *USA v. Komatsu*, No. 18-cr-651 (ST)(S.D.N.Y. Oct. 21, 2019) before I prevailed in that case, I immediately apprised the CSOs that I saw nearby about that threat by Mr. Gilmore and the fact that I demanded to talk with a member of the USMS then and there to report a complaint against Mr. Gilmore. When Mr.

Gilmore made his threat against me, he was irritated about the fact that I was lawfully making him get some exercise in with me by taking the stairs instead of an elevator to get to the third floor, where I intended to do legal research in the Records room. Back then, he was criminally stalking me while subjecting me to illegal discrimination and selective-enforcement with the USMS' blessing. The U.S. Supreme Court's decision in <u>Olmstead v. United States</u>, 277 U.S. 438, 48 S. Ct. 564, 72 L. Ed. 944 (1928) confirms that I was legally entitled to be left completely alone and to enforce that right because you illegally won't.

  Long story short, though I truthfully told Tiffany that Mr. Gilmore made a criminal threat to throw me down the stairs yesterday, I am 100% certain that he won't be properly punished for that in stark contrast to the material fact that I was maliciously prosecuted in <u>USA v. Komatsu, No. 18-cr-651</u> before I legally whipped the USMS, CSOs, and the U.S. Attorney's Office ("USAO") by having Sarah Mortazavi of the USAO beg U.S. Magistrate Judge Steven Tiscione to dismiss that case right before I would have otherwise testified truthfully and in detail to a jury against the USMS, CSOs, the USAO, and federal judges. I apprised Tiffany about this yesterday. Ms. Mortazavi's groveling to Judge Tiscione worked. This is borne out by the fact that Judge Tiscione dismissed <u>USA v. Komatsu, No. 18-cr-651</u> because of it on 10/21/19. The fact that you discriminatorily blocked me from being able to record a video recording yesterday inside of DPM explains why I prejudicially can't provide you with Mr. Gilmore's lip-service as he communicated his threat against me and lied about having made that threat thereafter.

  Also, CSOs that partly include Vincent Chirico can vouch for the fact that though I consistently conduct myself in an entirely lawful manner while visiting federal courthouses in New York City, I continue to be provoked and angered by the fact that personnel of the USMS together with CSOs are continuing to illegally display headshots of me and my name on tablet

computer screens inside of federal courthouses in New York City. I also apprised Tiffany about that practice yesterday. Mr. Chirico and I both saw an image of my face and my name shown on a tablet computer screen at 2:19 pm on 6/9/23 inside of the security screening area on the first floor inside of TM. People that include jurors, potential jurors, witnesses, attorneys, journalists, law students, law professors, judges, court clerks, politicians, and potential employers are among the people who can easily and freely see that information about me. The fact that such displays of information about me on those tablet computer screens is also occurring as the images of others are also shown on them is indicative of the fact that the USMS is using such displays as a watch-list of people who like me who quite possibly may have also legally whipped its personnel, CSOs, and the USAO prior to being retaliated against by the USMS, CSOs, and judges partly by being pretextually and criminally stigmatized, demonized, embarrassed by being shown on those screens to the general public. I'm again referring to the fact that I prevailed in <u>USA v. Komatsu</u>, No. 18-cr-651.

      What I discussed above confirms that you flagrantly violated your legal duty to intervene on my behalf to end all illegal and otherwise abusive acts and omissions against me by USMS and CSOs. I needn't again provide you the court decisions, rules, codes of conduct that confirm that I'm right about this. Immediately change your mind and explicitly authorize me to **a)** keep my cell phone and laptop with me throughout the entire time that I visit federal courthouses in New York City and **b)** use them partly to record video and audio recordings as well as to take photographs of all interactions that I have with CSOs and USMS personnel outside of courtrooms mainly for the reasons that I discussed earlier.

      Also, immediately cause a criminal contempt prosecution to be commenced against CSO Gilmore and the USMS partly due to violations of 18 USC 401 with respect to their commission

of the USMS' crimes against me. Additionally, immediately grant me a change of venue to some other judicial circuit for all federal litigation of mine that may be reinstated or newly commenced. Unless you do that, the likelihood is high that a physical altercation between a CSO and I will occur at some point inside of federal courthouse in New York City. To be clear, I have never assaulted any CSO and won't initiate any physical contact with them. However, if any of them initiate physical contact against me, I certainly will respond with legal and decisive self-defense. I have made it very clear that I would prefer to avoid that. That fact demands that you immediately order the USMS to stop having its personnel and CSOs stalk, harass, threaten, and otherwise mistreat and discriminate against me inside of federal courthouses. The 5 fucking years that I have had to contend with this bull shit is enough. I made that point as emphatically while talking with Tiffany yesterday.

I also learned yesterday about the patently fraudulent, pretextual, and retaliatory dismissal order that U.S. District Judge Edgardo Ramos issued on 6/6/23 in the consolidated case of *Komatsu v. City of New York*, No. 22-cv-7046 (ER)(GWG) (S.D.N.Y. Jun. 6, 2023). That case is hereinafter referred to as "K1" and was a consolidated case. What I discussed above about Mr. Gilmore counters and estops Judge Ramos' remarks in that 6/6/23 order about offensive expression by me strictly in legal filings that I filed. This is largely because Judge Ramos is among the despicable judges who illegally hasn't ever intervened on my behalf to end the USMS' crimes. He vexatiously waited roughly 2.5 years to issue that order. That was after he fraudulently didn't apprise me on 12/15/20 of the material fact that he let the plaintiff in *Ramirez v. Temin & Company, Inc.*, No. 20-cv-6258 (ER) (S.D.N.Y. Nov. 18, 2020) file a complaint in it that exceeded 50 pages in length. That fact confirms that he lied to me on 12/15/20 by claiming

that he requires every plaintiff in cases that are assigned to him to limit their complaints to 50 pages.

Judge Ramos' 6/6/23 order in K1 also fraudulently omitted the material fact that he lied to me during the 12/15/20 conference that I had with him by claiming that he requires every plaintiff in cases that are assigned to him to limit their complaints and amended complaints to 50 pages. The fact that Judge Ramos lied to me on 12/15/20 confirms that he is a con artist who criminally subjected me to obstruction of justice partly by restricting the page length of my complaints to less that 70 pages after 12/15/20. This likely explains why he has engaged in a self-serving cover-up by pretextually ignoring my demands to be provided a written transcript from that 12/15/20 conference. I previously informed you both that Judge Ramos's *Ramirez v. Temin & Company, Inc.*, No. 20-cv-6258 (ER) (S.D.N.Y. Nov. 18, 2020) decision confirms that he let the plaintiff in that case file a complaint in it that exceeded 70 pages in length. The excerpt shown next that is from page 15 in that 11/18/20 decision confirms that Judge Ramos both illegally discriminated against me in K1 and fraudulently didn't discuss this during my 12/15/20 conference with him.

> **V. MOTION TO STRIKE**
>
> Defendants argue that Ramirez's complaint is "prolix, replete with alleged evidentiary material, and redundant." Doc. 18 at 2. They also argue that the Complaint is too complex and excessive. Id. Although the Complaint, which spans 77 pages and 481 paragraphs, is perhaps more detailed than it strictly speaking needs to be, the Court does not conclude that Defendants will be prejudiced by denial of the motion; this Court will lean toward the general disfavor of motions to strike. See, e.g., Nungesser, 2017 WL 1102661, at * 2 (finding that Defendant was not prejudiced by a 271 paragraph and 100-page complaint). Therefore, Defendants' motion to strike Ramirez's Complaint and supporting documents is denied.

When I visited DPM yesterday, a woman who works in the court reporters' office on the third floor told me that the written transcript for the 12/15/20 conference that I had with him would be 22 pages in length. The following text that appears in the legal filing (Dkt. 253) that I filed in K1 on 10/24/21 confirms that I asked Judge Ramos then to cause me to be promptly provided a free copy of the written transcript for the 12/15/20 conference in K1 that he conducted partly with me:

> "I'm filing this letter to request that you immediately an order that will cause a written transcript to be prepared from the conference that you held in this case on 12/15/20 that concerned the filing restrictions that you have imposed upon me. While issuing such an order, I urge you to have made to have that transcript made available as soon as possible. I'm quite certain that the information that would appear in that transcript if it is accurately prepared will confirm that you engaged in flagrant and repeated acts of judicial misconduct in this case. The general public has a clear First Amendment right to be immediately aware of and apprised about that. The same is entirely true and accurate about those who are supposed to be providing proper oversight for how you and others operate as federal judges. "

The fact that Judge Ramos has opted to fraudulently and pretextually ignore that request speaks loudly about the fact that his decision to dismiss K1 was both pretextual and First Amendment retaliation against me. He also ignored the request that I made on 2/15/22 (Dkt. 329)

for a free transcript from another conference that I had with him in February of 2022. For these and other reasons that confirm that he was biased against me all along in K1, immediately strike his dismissal order in K1, strike all other decisions and orders that he has issued in K1 that have been adverse to my interests, reassign K1 to other judges in a different judicial circuit, and have Judge Ramos investigated and prosecuted for contempt and obstruction of justice. Also, immediately get me the written transcripts for free that I requested in K1.

One of the things that struck me as very odd and indicative of bias by Judge Ramos during the 12/15/20 conference in K1 with Judge Ramos was a remark that he made about New York State Senator Jessica Ramos. He described her then as being a young lady instead of having accurately described her as an old, stupid, and ugly streetwalker who conspired with other City of New York personnel to rig and steal 2017's elections in New York City for job security and promotions. E-mail evidence that I have supports this characterization of her.

Also, the filing restriction that Judge Ramos imposed on me in K1 has been something that you have held against me. This isn't the first time that I have apprised you about the material fact that he lied to me by withholding the information about _Ramirez_ from me during my 12/15/20 conference with him. I apprised you about both that and the fact that he illegally wasn't issuing a timely decision for the decision that he finally issued in K1 on 6/6/23 to no avail. You aided and abetted that obstruction of justice by him against me by countenancing that in flagrant violation of your legal duty to have intervened partly by having administratively reassigned K1 to other judges in a different judicial circuit altogether to allow the appearance of justice to exist in litigation of mine. The fact that the New York State Court of Appeals stated the following in its decision in _People v. Shinkle_, 51 N.Y.2d 417, 415 N.E.2d 909, 434 N.Y.S.2d 918 (1980) supports this point about the fact judges must be swiftly reassigned from litigation of mine

whenever they engage in improprieties through their acts and omissions in order to allow the appearance of justice to exist such litigation:

> "Defendant, and indeed the public at large, are entitled to protection against the appearance of impropriety and the risk of prejudice attendant on abuse of confidence, however slight"

What I discussed above about clear harassment, selective-enforcement, and the need for a change of venue for litigation of mine leads to what I will discuss next. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) is controlling law and points out that a "vague law impermissibly delegates basic policy matters to" law-enforcement personnel that include judges, CSOs, and USMS personnel "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Also, U.S. District Judge Valerie Caproni stated the following in her 8/30/21 order (Dkt. 115) in *Komatsu v. City of New York*, No. 20-cv-10942 (VEC)(RWL)(S.D.N.Y. Jun. 17, 2022) that is hereinafter referred to as "K2" about the fact that she wouldn't penalize me in that case due to offensive remarks by me that I made in legal filings in that case:

> "Had the inappropriate language been the only problem with Mr. Komatsu's filings, the Court would not have imposed the filing restrictions."

As a reminder, *Komatsu v. Ramos*, No. 22-cv-6076 (LTS) (S.D.N.Y. Aug. 15, 2022) that is hereinafter referred to as "K3" was about the fact that Judge Ramos criminally caused my complaint in K2 to be struck from that case on 1/5/21 in spite of the fact that he never was assigned to K2 and therefore didn't have a shred of immunity for that. You later fraudulently claimed in K3 that he had immunity for that. Actions that partly include illegally causing a legal filing of mine to be struck and threatening to throw me down a set of stairs speak more loudly and are more harmful than offensive remarks in a legal filing. On a related note, *Monsky v. Moraghan,* 127 F.3d 243 (2d Cir. 1997) contains the following findings:

      a.      "We do not doubt that hostile action toward a litigant could be so offensive as to effectively drive the litigant out of a courthouse and thereby become the functional equivalent of a denial of access."

      b.      "the plaintiff may well have experienced the emotional distress and humiliation that she has alleged."

      c.      "these effects, if proven, might be consequential damages components of a section 1983 claim in which actual injury to court access was sufficiently alleged"

Furthermore, though the 2/25/22 order that was issued in <u>In Re Violation of Revised Protocols, 26 F.4th 1270 (Fed. Cir. 2022)</u> states the following, I can certainly confirm that an critical need sorely exists for a search party to be promptly established to locate and recruit federal judges with spines to replace the inept and obsequious group that plagues New York City's federal courts:

> "Any contention that court staff somehow authorized entry is irrelevant. Court staff, including court security officers, cannot override a court order."

This is because no one who is among the existing federal judges in New York City has shown that he or she has a spine with which to perform his legal duty to exercise proper control of court by keeping the behavior of CSOs and USMS personnel in proper check. The fact that Judge Ramos obscenely wasn't punished for causing my complaint in K2 to be struck must reciprocally also cause me to be retroactively indemnified partly in K1 for offensive remarks that I made strictly in legal filings. This point is buttressed by the fact that <u>RAV v. St. Paul, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)</u> states the following that underscores what I discussed earlier about illegal selective-enforcement and discrimination:

> "St. Paul has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules."

Also, though Judge Ramos whined in his 6/6/23 dismissal order in K1 about the fact that I made offensive remarks strictly in legal filings that I filed in K1, he predictably and

fraudulently omitted the material fact that Judge Caproni's remarks in her 8/30/21 order in K2 together with the fact that she didn't dismiss K2 due to offensive remarks by me blocked him from being able to lawfully dismiss K1 due to offensive remarks by me in legal filings. The material fact that I continue to be criminally stigmatized, physically threatened, and otherwise harassed by personnel of the USMS and CSOs inside of federal courthouses in New York City while I conduct myself in a lawful manner confirms this. Page 21 in the supporting affirmation for the motion that I filed on 2/4/21 in *Komatsu v. City of New York*, No. 21-75 (2d. Cir.) contains the following information about injunctive relief that I sought that confirms that I apprised the U.S. Court of Appeals for the Second Circuit ("Second Circuit") then about an illegal practice by the USMS and CSOs against me inside of federal courthouses in New York City:

> "No CSO nor member of the USMS will have possession of any image of me inside of federal courthouses while I conduct myself in a lawful manner in them nor otherwise allow an image of me to be displayed by them nor anyone else inside of federal courthouses without my consent."

The Second Circuit has continued to illegally not grant me any relief against the USMS nor CSOs about what I have previously described partly to you and U.S. District Judge Raymond Dearie as the "USMS' crimes". I incorporate my description by reference as though fully set forth herein about what that entails from numbered paragraph 6 on page 5 of the amended complaint that I filed on 6/2/22 in *Komatsu v. USA*, No. 21-cv-1838 (RJD)(RLM)(S.D.N.Y. Jan. 19, 2023). According to Judge Ramos, Judge Schofield, Judge Caproni, Judge Gorenstein, and Judge Dearie, I'm required to have to continuously take the functional equivalent of a punch in my face, slap across it, and spit in my face without becoming enraged about that and expressing myself with anger towards those who enable such abuse towards me. Things simply don't work that way. Tiffany asked me yesterday if I have a chip on my shoulder every time I visit DPM. I

told her that I certainly do and justifiably so largely because of the fact that I was criminally prosecuted in <u>USA v. Komatsu, No. 18-cr-651</u>, I prevailed in that case, and that fact hasn't ended the USMS crimes.

  Returning to my earlier discussion about Judge Ramos' 6/6/23 order in K1, he fraudulently didn't mention anything in it about the fact that he criminally caused my complaint in K2 to be struck on 1/5/21 while he was never assigned to K2. Judge Ramos also fraudulently didn't mention anything in his 6/6/23 order in K1 about the fact that he fraudulently condoned the fact that Pinny Ringel and Joni Kletter jointly subjected me to First Amendment retaliation on 11/16/21 during a public resource fair meeting that was a public forum by illegally preventing me from talking with Steven Banks while Mr. Banks then was the Commissioner of the New York City Department of Social Services ("DSS"). DSS is the parent agency of the New York City Human Resources Administration ("HRA") and the New York City Department of Homeless Services ("DHS"). Mr. Ringel was a defendant in <u>Komatsu v. City of New York, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.)</u> that is hereinafter referred to as "K3". I recorded a video on 11/16/21 as Mr. Ringel and Ms. Kletter subjected me to illegal First Amendment retaliation in a manner and for reasons that were very similar to why Mr. Ringel and other City of New York personnel illegally prevented me from attending a public town hall meeting on 4/27/17 in Queens that my claims in K3 were partly about. Ms. Kletter told me on 11/16/21 while I recorded her on video that her actions and those of Mr. Ringel against me then were due to litigation of mine. That was a clear smoking gun about First Amendment retaliation. Both the 4/27/17 illegal acts and the 11/16/21 illegal acts against me partly by Mr. Ringel were due to litigation of mine against HRA as well as criticism and whistleblowing by me partly against Mr. Banks, HRA, and HRA's business partners. I provided Judge Ramos a video recording of the 11/16/21 incident and

he fraudulently condoned that. By doing so then, that cemented the fact that Judge Ramos was unfit to be a judge in K1 due to its subject matter and the fact that he was biased in favor of the defendants. Findings in the decision that the U.S. Court of Appeals for the Eighth Circuit issued on 4/13/23 in *Rinne v. Camden County*, No. 21-3858 (8th Cir. Apr. 13, 2023) concern public forums and First Amendment retaliation. The findings in that decision clearly confirm that Judge Ramos fraudulently condoned the illegal acts by Mr. Ringel and Ms. Kletter against me on 11/16/21.

Furthermore r*es judicata* applies in litigation only in instances in which the parties have been accorded a full and fair hearing, especially during appeals. This leads to what I will next discuss about why illegal obstruction of justice against me demands the immediate reinstatement of the following cases of mine as active cases:

    a.    *Komatsu v. City of New York*, No. 21-cv-11115 (LTS) (S.D.N.Y. Sep. 16, 2022)

    b.    *Komatsu v. City of New York*, No. 22-cv-6627 (LTS) (S.D.N.Y. Aug. 15, 2022)

    c.    *Komatsu v. Ramos*, No. 22-cv-6076 (LTS) (S.D.N.Y. Aug. 15, 2022)

The next paragraph and table are excerpts from a new complaint that I'm preparing for a new federal civil action partly against the City of New York.

> The table shown next provides links to press releases that the U.S. Attorney's Office for the Southern and Eastern Districts of New York issued about HRA personnel having engaged in acts of fraud and theft partly in regards to SNAP benefits that HRA issues that causes it more likely than not that what caused me to be illegally defrauded of food-stamp and CA benefits on 2/27/23 was the result of HRA personnel having again committed acts of fraud and theft that affected me this time.

| # | Date | Title | Link |
|---|------|-------|------|
| 1 | 10/7/16 | Former New York City Human Resources Administration Supervisor Sentenced To 23 Months In Prison For Defrauding Two Public Assistance Programs Of More Than $1.8 Million | https://www.justice.gov/usao-sdny/pr/former-new-york-city-human-resources-administration-supervisor-sentenced-23-months |
| 2 | 3/30/17 | NYC Human Resources Administration Employee Charged With Inside Scheme To Steal Public Benefits | https://www.justice.gov/usao-edny/pr/nyc-human-resources-administration-employee-charged-inside-scheme-steal-public-benefits |
| 3 | 4/11/19 | Former New York City Human Resources Administration Employee And Two Others Plead Guilty To Scheme Involving Theft Of Hundreds Of Thousands In HRA Funds | https://www.justice.gov/usao-sdny/pr/former-new-york-city-human-resources-administration-employee-and-two-others-plead |

Although the following is entirely true, HRA illegally hasn't replaced any of the cash-assistance and food-stamp benefits government benefits that I was illegally defrauded of on 2/27/23 due to negligence by HRA:

a. I apprised Nigel Marks of the New York State Office of Temporary and Disability Assistance ("OTDA"), Ann Marie Scalia of HRA, and other OTDA and HRA personnel on 4/3/23 via e-mail while she Ms. Scalia was HRA's General Counsel of the fact that I was defrauded on 2/27/23 of **a)** more than $340 in cash-assistance benefits and **b)** more than $750 in food-stamp benefits.

b. 18 NYCRR §352.31(f)(1) contains the following text that confirms that HRA was legally required to replace those stolen benefits within 30 days from when I reported that theft on 4/3/23:

(f) **Correction of underpayments to current recipients.**

> (1) Social services districts must correct any underpayments to current recipients, and to those who would be current recipients if the error causing the underpayment had not occurred, by making appropriate payments in each case within 30 days after discovery of the underpayments.

c.  Ms. Scalia issued me a binding and fully-enforceable agreement on 8/1/17 in which she stated at the end of it that she and HRA would assist me in any way possible. The following is a screenshot of the end of that agreement:

> We will continue to try to address your concerns and assist you in any way possible.
>
> Sincerely,
>
> *Ann Marie Scalia*

d.  The U.S. Supreme Court's decision in *Noble v. Union River Logging R. Co.*, 147 U.S. 165, 13 S. Ct. 271, 37 L. Ed. 123 (1893) is controlling law and states the following about the fact that Ms. Scalia and HRA were and remain legally required to fully comply with the commitment to me that Ms. Scalia made on 8/1/17 while speaking for herself and HRA after former HRA Commissioner Steven Banks caused her to contact me then:

> "it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it."

e. *TB v. Town of Hempstead Animal Shelter*, No. 21-522 (2d Cir. Mar. 11, 2022) states the following that confirms that Ms. Scalia has a special-duty to me that legally requires her to continuously assist me "in any way possible":

> "In New York, a plaintiff asserting a negligence claim against a municipality "perform[ing] a governmental function," must "prov[e] that the municipality owed a `special duty' to the injured party." *Velez v. City of New York,* 730 F.3d 128, 134-35 (2d Cir. 2013).[1] A plaintiff may establish a special duty by showing that "(1) [he] belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Applewhite v. Accuhealth, Inc.,* 21 N.Y.3d 420, 426 (2013)."

Information that is available on the U.S. Supreme Court's web site at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22a602.html indicates that I had until 5/21/23 to be able to print and mail all of the copies for a petition for a writ of certiorari in the consolidated appeal of mine to the U.S. Supreme Court ("SCOTUS") that corresponds to *Komatsu v. Ramos*, No. 22A602 (U.S.). The following were the underlying district court actions that that appeal was about:

a. *Komatsu v. City of New York*, No. 21-cv-11115 (LTS) (S.D.N.Y. Sep. 16, 2022)

b. *Komatsu v. City of New York*, No. 22-cv-6627 (LTS) (S.D.N.Y. Aug. 15, 2022)

c. *Komatsu v. Ramos*, No. 22-cv-6076 (LTS) (S.D.N.Y. Aug. 15, 2022)

d. *Komatsu v. City of New York*, No. 22-cv-7046 (ER)(GWG) (S.D.N.Y. Jun. 6, 2023)

The City of New York, Ms. Scalia, and Mr. Marks were among the defendants in *Komatsu v. City of New York*, No. 21-cv-11115. This is a critical fact largely because they

illegally deprived me of sorely needed funds to which I was legally entitled and that circumstance proximately blocked me from being able to print and mail all of the copies of my petition for a writ of certiorari for <u>Komatsu v. Ramos</u>, No. 22A602 (U.S.) by the 5/21/23 deadline that I had for that. That fact demands the immediate reinstatement of **a)** <u>Komatsu v. City of New York</u>, No. 21-cv-11115, **b)** <u>Komatsu v. City of New York</u>, No. 22-cv-6627, and **c)** <u>Komatsu v. Ramos</u>, No. 22-cv-6076 and the reassignment of all of that litigation to other judges together with a change of venue to a location outside of this judicial circuit because such gamesmanship to subject a legal adversary to a war of attrition through pretextual economic warfare isn't permissible. Although I requested a fair hearing about that with OTDA, OTDA hasn't biasedly hasn't conducted that.

| | |
|---|---|
| From, | 781 East 135th St. |
| | Bronx, NY 10454 |
| Towaki Komatsu | 305-784-7450 |
| | Towaki_Komatsu@yahoo.com |
| s_/Towaki Komatsu | |
| *Plaintiff, Pro Se* | |